SULLIVAN MACHINE CO. (AMERICAN DIAMOND ROCK-BORING CO. v.). See Case No. 298.

SULLIVAN RAILROAD CO. (HALL v.). See Case No. 5,948.

SULSOR (HAYS v.). See Case No. 6,271.

———

## Case No. 13,601.

### The SULTAN.

### ROBERTS et al. v. The SULTAN.

[6 Adm. Rec. 112.]

District Court, S. D. Florida. May 25, 1858.

SALVAGE—AMOUNT—DEDUCTION.

[A ship laden with cotton and corn in bags ran ashore upon Conch Reef with dangerous shoals on both sides ahead and astern. She was lightened, heaved off, and brought to port by the aid of 12 wrecking vessels, carrying 108 men, employed four days and nights. The vessel was worth $14,000; the cargo, $113,000. *Held*, that $23,000 was a reasonable salvage, but should be reduced $5,000 for the failure of the wrecking master to make careful soundings, resulting in an ineffectual effort to heave the vessel off in a wrong direction.]

[This was a libel in rem by Richard Roberts and others against the ship Sultan and cargo for salvage.]

Winer Bethel, for libellants.

S. J. Douglas, for respondent.

MARVIN, District Judge. This ship, laden with 2,386 bales of cotton, and 6,000 bags of corn, bound from New Orleans to Liverpool, during the night of the 9th of May inst., ran ashore upon Conch Reef. After striking, she slued about half around, and drove up into three feet less water than she drew, and remained stationary, irregular patches of shoals or rocks lying on both sides and ahead, and but eleven feet of water, at the distance of half the ship's length astern. She drawing seventeen feet. The ship lay in a perilous situation in any wind, but with the wind from the south or southeast, her peril would have been much greater. Soon after daylight, in the morning, the ship was boarded by Roberts and his associates, who offered their assistance to the master, who accepted it; and they proceeded to carry out an anchor, and lighten the ship. They lightened the ship of 1,560

bales of cotton, and after carrying out two more anchors, heaved the ship off, and brought her to this port. Twelve wrecking vessels, of the aggregate tonnage of 917 tons, carrying in all 108 men, were employed four days and nights, in rendering this service. The value of the ship may be estimated at $14,000, and the cargo at $113,000; making the aggregate value of ship and cargo $127,000. I think, that $23,000 would be a reasonable salvage, but for the following considerations:

We have shown, that the ship was hemmed in by shoals, and that her situation was such as to call for a minute and accurate knowledge of the position and size of the shoals and of the channels, which could only be acquired by complete soundings and a careful inspection in order to extricate her, in the shortest possible time, from her perilous position. And after these were ascertained, there would have been an opportunity for the exercise of the very best judgment and skill, in rescuing the ship. The master confiding in the skill and ability of Roberts, as an experienced licensed wrecker, entrusted to his judgment the planting of the anchor, and the business of lightening the ship. Roberts caused soundings to be made, and carried the anchor out on the starboard bow, and attempted to get the ship off by lightening and heaving on that anchor. The result, in the end, proved that the ship could not be heaved off in that direction, and an anchor was carried out astern, by which the ship was heaved off. It was a nice operation; for the ship could not be heaved astern any more than half her length, without striking a shoal on which there were but eleven feet of water, and unless the ship floated upon being heaved thus far astern, the experiment would fail. It, however, succeeded. The ship floated, the bow dropped off to the starboard, and the ship was saved. Roberts erred in not causing more minute and careful soundings to be made before he adopted the plan of heaving the ship off to the starboard before she had been heaved half her length astern. Had more complete soundings been made, he would have known the bottom better, and his good judgment would have directed him, at an earlier period in the history of the transaction, to the proper course to rescue the ship. There is not the least reason for imputing to Roberts or his associates either fraud or that kind of gross neglect of duty which is tantamount to fraud, and which works a forfeiture of all salvage. His error was wholly of the head, not the heart, and grew out of his imperfect knowledge of the bottom. He thought the soundings were sufficient, and that he was possessed of a sufficient knowledge of the bottom to enable him to decide upon the proper plan to rescue the vessel. He was mistaken. He did not possess a sufficient knowledge of the bot-

tom, and it was his duty to have made more minute and careful soundings. For this neglect of duty, I think that the salvage ought to be diminished $5,000 from which it otherwise should be, and that $18,000 is a reasonable salvage to allow.